# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**TIMOTHY E. OSBORNE,**

      **Plaintiff,**

*vs*.                                       **CRIMINAL ACTION NO. 2:07CV7**
                                                   **The Honorable Irene M. Keekey**

**ASPLUNDH TREE EXPERT COMPANY,**

      **Defendant.**

## ORDER/OPINION

On January 27, 2009, Defendant issued a *subpoena duces tecum* to Independence Blue Cross Personal Care, seeking medically-related bills and other information of Tabatha R. Osborne, for the periods of March 1, 2006, through May 30, 2006. On February 6, 2009, Plaintiff, Timothy E. Osborne, and Tabatha Osborne jointly moved the Court for an order quashing the *subpoena duces tecum* and protecting against the disclosure of Tabatha Osborne's personal medical information, claiming that the *subpoena duces tecum*, issued by the Defendant, was procedurally and substantively defective [Docket Entry 73].

Inasmuch as Tabatha Osborne is not a party to the within civil action, and inasmuch as the joint Motion to Quash *Subpoena Duces Tecum* and for Protective Order [Docket Entry 73] raises serious procedural and substantive issues concerning the *subpoena duces tecum* and the information sought by it, and inasmuch as serious privacy concerns of a non-party are involved, and because there is no existing court order directing the production of the non-party's medical information for use in this civil action, it was, accordingly, ordered that the execution of the *subpoena duces tecum* be, and the same was, stayed, pending the further order of this Court.

It was further ordered that the parties, by counsel, appear before the Court, on February 19,

2009, at 11:00 a.m., at the Clarksburg point of holding court for a hearing on the Motion to Quash *Subpoena Duces Tecum* and for Protective Order [Docket Entry 73].  Upon later request that the Court hear all pending motions at once, the Court also heard Defendant Asplundh's Motion for Leave of Court to Reconvene the Deposition of Plaintiff Timothy E. Osborne [Docket Entry 70].

The parties, through counsel, appeared before the Court for the above-referenced motions on February 19, 2009.

### Defendant Asplundh's Motion for Leave of Court to Reconvene the Deposition of Timothy E. Osborne [Docket Entry 70].

Defendant represents that Plaintiff Timothy Osborne was originally deposed on December 4, 2008, which deposition was reconvened, by agreement of the parties, on December 18, 2008, for the limited purpose of questioning Plaintiff regarding documents and records requested in discovery but not produced prior to Plaintiff's deposition.  Pursuant to Fed.R.Civ.P 30(a)(2)(A)(ii), Defendants must obtain leave of Court to reconvene Plaintiff's deposition because the parties have not stipulated to the deposition and the deponent has already been deposed in the case.

Defendants state that on January 7, 2009, after Plaintiff's deposition, Plaintiff's counsel took the deposition of James W. Baer, a former General Foreman at Defendant Asplundh.  Mr. Baer is a non-party witness also represented by Asplundh's counsel.  Defendants assert that Mr. Baer testified that Plaintiff had contacted him the night before his deposition, and Plaintiff had attempted to discuss the substance of his claims with Mr. Baer. (Defendant's Motion at p.1-2, Baer Dep. Pp. 25-27; 36-38, attached to Motion as Exhibit 1).

According to the transcript of Mr. Baer's deposition at the cited pages, Mr. Baer first testified that the last time he had talked to Plaintiff was a "couple of weeks ago."  When asked specifically if he had talked to Plaintiff the night before his deposition, Mr. Baer responded, "He called me on the

2

way home last night come to think of it. Yes, he did." Mr. Baer testified that the two talked about football and did not talk about his pending deposition. In fact, Mr. Baer testified that Plaintiff "didn't even know I was even down here yesterday." Mr. Baer testified he did not tell Plaintiff he was going to be deposed, but Plaintiff knew already, presumably from counsel. He did not tell Plaintiff anything about his pending deposition.

Mr. Baer testified that Plaintiff asked him if he recalled Plaintiff having heart problems the end of March, and Mr. Baer told him he "recalled the question that he asked me about what it felt like for me when I had it." Mr. Baer was asked: "Did you tell him that you recalled that he needed time off because he was having testing done for a heart problem?" Mr. Bear responded: "No. No. He took off for his wife." Mr. Baer said that was what he told Plaintiff. He then testified that Plaintiff told him his wife "didn't have a hysterectomy. So, apparently, they did something else. I don't know." Mr. Baer testified that in April, "that's what he [Plaintiff] took off for. He thought she was going to have to have a hysterectomy."

Mr. Baer testified that during the conversation with Plaintiff the night before his deposition, Plaintiff "started getting onto the case, but I wouldn't go for that. So I got back on the football."

Defendants additionally contend that while Mr. Baer was being deposed, he received a phone call during a break, from another former Asplundh employee, who had been contacted by Plaintiff. This third party allegedly indicated to Mr. Baer that Plaintiff had told him Mr. Baer had testified unfavorably for Plaintiff, or, as stated at the hearing: "Tim Osborne says you're throwing him under the bus."

Defendants argue that "[t]hese contacts, both direct and indirect, appear to have been calculated to influence the testimony of Mr. Baer. Further it appears that Plaintiff has attempted to contact other Asplundh employees, including, but not limited to, Holly Fink."

3

Defendants argue it is necessary to reconvene Plaintiff's deposition in order to investigate contacts and conversations Plaintiff has had with Asplundh witnesses, and others, since his deposition, which are relevant to Plaintiff's claims in this action. Defendants further argue that a reconvened deposition is necessary to avoid undue surprise at trial, stating that they reasonably believe Plaintiff may seek to introduce evidence related to these conversations at trial, and they will be unduly prejudiced at trial if they have not been permitted to investigate these alleged contacts and conversations.

Defendant states that, in the alternative, it has requested that Plaintiff stipulate that he will not use any information from contacts with witnesses made after his deposition, but Plaintiff refused this option.

In response to Defendant's Motion, Plaintiff filed a portion of Mr. Baer's deposition transcript. Page 57 of the transcript provides as follows:

Q  Did you ever do that?

A  No, I didn't.

Q  So you never lied for him?

A  No. I'm not going to lie for him.

Q  Isn't it true that when you talked to Tim a few months ago that you told Tim that you weren't going to lie for the company?

A  I said I wasn't going to lie for the company or him.

Q  So you tell people all the time that you are not going to lie for them?

A  That's right.

Q  So you are not going to lie for Asplundh and you are not going to lie for Tim?

A  No. I'm giving you the best of my memory.

4

Q       Has Asplundh asked you to lie for them?

A       No. Tim didn't ask me to either, but he implied it like that.

Q       Tim didn't ask you to either?

A       He did not either.

Plaintiff, through counsel, argues that he has not had any communication with Mr. Baer since the day before the deposition. Further, the 3rd party was never identified as a witness, and there is no evidence that Plaintiff Osborne told that third party to call Baer during the deposition. Counsel noted that Plaintiff had contacted individuals solely to get their contact information for his lawyers' use.

Upon consideration of all which, the Court finds:

1. Plaintiff has been deposed two times.

2. Defendant has access to Mr. Baer, and Defendant's counsel, in fact, also represents Mr. Baer. It seems clear therefore that Defendant can ask Mr. Baer as well as the third party what type of communications they had with Plaintiff either before or after his or their depositions.

3. The Court cannot know whether Plaintiff Osborne encouraged or coerced in any way the third party to contact Mr. Baer. That information should all be available to Defendant, however, through methods other than a third deposition of Plaintiff.

5. Notwithstanding that such information is relevant to the lawsuit in that it may provide the basis for impeachment of a trial witness and other courts within the Fourth Circuit have held that evidence obtained solely for the purpose of impeachment is discoverable within the federal discovery rules. *See, e.g., Becker v. Bayer Cropscience, L.P.,* 2006 U.S. Dist. LEXIS 44197, at *11 (S.D.W.Va.2006); *Newsome v. Penske Truck Leasing Corp.,* 437 F.Supp.2d 431, 436-37 (D.Md.2006); *Belher v. Hanlon,* 199 F.R.D. 553, 561 (D.Md.2001); *Ward v. CSX Transp.,* 161 F.R.D. 38, 39 (E.D.N.C.1995), the discovery being sought in this case is

collateral to the main issue; may not even arise at trial; is available from other sources; and to take a third deposition to delve into something that may never arise appears unduly burdensome.

For the above and other reasons, Defendant Asplundh's Motion for Leave of Court to Reconvene the Deposition of Plaintiff Timothy E. Osborne [Docket Entry 70] is **DENIED**. Defendant's Objection to this Ruling is duly noted.

## Timothy and Tabatha Osborne's Joint Motion to Quash
## Defendant's Subpoena Duces Tecum and for Protective Order [Docket Entry 73].

### A. Procedural Faults

Plaintiff and his wife, Tabatha Osborne move the Court to quash a *Subpoena Duces Tecum* issued by counsel for the Defendant, and directed at Independence Blue Cross Personal Care, a non-party. The subpoena seeks to compel the production of "the private, privileged medical information of Mrs. Osborne, also a non-party." Plaintiff provides two reasons the Court should quash the subpoena. First, it is procedurally defective, in that the defendant did not notify Plaintiff's counsel of the issuance of the subpoena until after it had been served, and provided no notice to Mrs. Osborne, the subject of the Subpoena. Pursuant to Fed.R.Civ.P 45(b)(1), "If the subpoena commands the production of documents . . . then before it is served, a notice must be served on each party." Not only was Plaintiff, a party, not provided notice prior to the subpoena issued, but Mrs. Osborne was apparently "served" only through Mr. Osborne's counsel, even though she is a non-party and the materials sought are her records. Mrs. Osborne did subsequently retain Mr. Osborne's attorneys to represent her in this matter also.

Defendants admit they did cause a subpoena to be served directed at Independence Blue Cross, Plaintiff's and Mrs. Osborne's health insurance carrier. Notice of service of the subpoena was sent

6

to counsel for Plaintiff the next day. Correspondence attached to the notice acknowledged the likelihood that Plaintiff would object to the subpoena. Both Plaintiff and Defendant contacted Independence Blue Cross to request no further action be taken regarding the subpoena until this motion was resolved. The parties agree no further action has been taken by Independence Blue Cross to comply with the subpoena.

Defendant's counsel acknowledged that its correspondence, sent one day after the subpoena was issued, "is a technical violation of Rule 45(b)(1) of the Federal Rules of Civil Procedure." They then argue, however, that the delay in providing notice to Plaintiff's counsel was not intended to deprive him or Mrs. Osborne of the opportunity to object of move to quash the subpoena. "In fact, Asplundh acknowledged the likelihood of Plaintiff filing the pending motion in its correspondence enclosing the subpoena."

Defendant argues that "[t]he brief delay in notifying Plaintiff's counsel has not prejudiced Plaintiff or Mrs. Osborne. No information has been provided to Asplundh as a result of the subpoena." Counsel in fact communicated with Independence Blue Cross indicating that Asplundh did not intend to seek information responsive to the subpoena in light of the anticipated Motion to Quash. Therefore, they argue, "[n]either Mrs. Osborne nor Plaintiff have been deprived of an opportunity to object, and no information has been , or will be, disclosed pursuant to the subpoena, during the pendency of the Motion to Quash. Plaintiff and Mrs. Osborne have not been prejudiced by the delay in notice regarding service of the subpoena. Since Plaintiff and Mrs. Osborne have been able to fully protect their interests, Asplundh requests that this Court deny the Motion to Quash and permit discovery of the requested information, subject to any necessary protections.

**B.  Substantive arguments**

Plaintiff argues that the subpoena is also substantively defective "in that it seeks to compel the production of private, privileged medical information of a non-party (Mrs. Osborne)." Plaintiff argues that Mr. Osborne should be protected from attempts to obtain "her irrelevant, private, privileged medical information."

Defendant argues that Mrs. Osborne's medical records are relevant to the litigation, because Plaintiff's claim is that Defendant fired him while he was off work on disability, while "Asplundh witnesses, former co-workers of Plaintiff, and Plaintiff's own roommate testified that Plaintiff's wife was ill during the weeks prior to his separation of employment." Defendant represents that witnesses recalled that Plaintiff requested time off because his wife had health problems and he needed to help with the children. Defendant therefore believed Plaintiff initially requested time off related to his wife's, not his own, health. "Thereafter, unbeknownst to Asplundh, Plaintiff was referred by his own physician for medical testing. Prior to being diagnosed with any problem or referred for any treatment, Plaintiff was separated from his employment. Only after being separated did Plaintiff notify his employer he was suffering from a health condition as well."

Defendant therefore argues that in order to determine if Plaintiff's account of the events surrounding his separation from employment is accurate, Asplundh seeks information related to Mrs. Osborne's health during the relevant time frame. Asplundh represents that "[i]n order to not unnecessarily intrude into irrelevant and private matters, Asplundh's request for information was limited solely to care or treatment received in March, April or May, 2006." Defendant argued that requested information could establish that Plaintiff was aware his wife was suffering from a health condition and received medical treatment during the time at issue, stating: "The requested documents are certainly reasonably calculated to lead to the discovery of admissible evidence."

Plaintiff argues that Mrs. Osborne's medical records are not relevant to the subject matter of

the Plaintiff's employment discrimination case.  Further, the disclosure of Mrs. Osborne's sensitive and highly personal medical data is an unnecessarily intrusive act." Counsel for Plaintiff advised the Court that, subsequent to subpoena being issued, Mrs. Osborne was deposed.  She was questioned thoroughly regarding her medical condition during 2006.  Mrs. Osborne willingly answered all questions, and provided information regarding her health and any assistance she may have needed from her husband, the Plaintiff, during the relevant time frame.  Mrs. Osborne testified that Plaintiff had no knowledge of any health condition she had at the time.  He was not aware of any health condition she had until April 11 (<u>after</u> he had already requested time off due to his own serious heart condition.)

As Plaintiff himself acknowledges, this Court has the authority to "order discovery of any matter relevant to the subject matter involved[.]" Fed.R.Civ.P. 26(b)(2).  Further, "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." <u>Id.</u>  In deciding whether the information must be disclosed, the Court must balance the competing interests of Mrs. Osborne, a non-party, and the defendant. <u>Ayers v. Continental Casualty Co.</u>, 2007 WL 1969613 (N.D.W.Va. Judge Stamp).  The Court inquired as to Defendant's methodology– why subpoena the health insurance carrier instead of medical providers.  Defendant stated that they believed at the time the subpoena issued, that it was the most efficient way they had to obtain any medical records, dates of treatment, or even identities of providers.  For example, counsel stated that during Mrs. Osborne's deposition, she testified she had an appointment around April 11, 2006, but Plaintiff's privilege log has nothing for that date.

Counsel for Plaintiff argued that they did not know what those insurance records contained.  There may be simply dates and coding, but may be a whole lot more.  Counsel did not believe Defendant should be able to get this information just for a "fishing expedition."

9

Upon consideration of all which, the Court finds Mrs. Osborne's medical records during the narrow time frame of March, April, and May 2006 are relevant to an underlying issue in the case. While this issue may have been initiated by Defendant, Plaintiff joined the issue by arguing and testifying that he did not even know his wife had medical issues. Meanwhile Defendant asserts it has witnesses who testified that Plaintiff informed them of his wife's health condition, and even told them he needed time off to assist her and take care of the children.

The Court finds the medical records may resolve these inconsistencies. The Court therefore finds:

1. The medical information of Tabatha Osborne for the limited time period in the subpoena has, at this juncture, been made relevant by positions taken by the parties with respect as to whether Plaintiff's absence from work was due to his own medical needs or his wife's.
2. The subpoena issued to the insurance carrier was procedurally defective, as it provided no prior notice to Plaintiff and was not served properly on Mrs. Osborne.
3. The procedural issues, in particular notice, have been rendered moot by the Court's hearing.
4. Rule 26(c) and 37 do not provide an appropriate or adequate remedy when considering a motion to quash a subpoena for a non-party's information.
5. Even the deposition taken of Tabitha Osborne and the additional information she provided did not settle the issue.
6. Defendant is entitled to seek the information sought by the subpoena process.
6. Defendants may obtain that information through the subpoena already issued. The Court will require Defendant to reissue the subpoena, because the court-imposed stay on the subpoena and then the hearing cured the procedural defect.
7. Defendant shall not be permitted to show any information obtained through the subpoena to

insurers or to others outside of counsel themselves and their immediate client-contact person. The information will not be provided to any other persons, including experts, without further order of the Court.

8. Defendant is to provide copies of the discovery received through the subpoena to counsel for Plaintiff, so Plaintiff can be on the same footing as Defendant with respect to what information was obtained.

9. Nothing in this decision addresses the admissibility of the information obtained, and this order does not make the information obtained admissible for any purpose beyond discovery.

10. The prior order temporarily staying execution of the subpoena duces tecum is hereby terminated; the stay of the execution of the *subpoena duces tecum* is hereby lifted; and Independence Blue Cross, Plaintiff's and Mrs. Osborne's health insurance carrier, is hereby directed to forthwith comply with the previously issued and served subpoena duces tecum.

Timothy Osborne and Tabatha Osborne's Joint Motion to Quash Defendant's Subpoena *Duces Tecum* and for Protective Order [Docket Entry 73] is **DENIED**. Defendant's Objection to this ruling is duly noted.

It is so **ORDERED.**

The United States Clerk for the Northern District of West Virginia is directed to provide a copy of this order to counsel of record.

DATED: February 19, 2009

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE